Minute Order Form (06/97)

# United States District Court, Northern District of Illinois



| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5179 | **DATE** | 5/22/2000 |
| **CASE TITLE** | Ty, Inc. Vs. Robert S. LeClair etc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The motion for a preliminary injunction is denied. Status hearing set for June 1, 2000 at 9:45am.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | Document Number |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | MAY 2 3 2000 date docketed | |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| WAH | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

TY, INC.,

    Plaintiff,

vs.

ROBERT S. LE CLAIR,
d/b/a HOLY BEARS, INC.,

    Defendant.

No. 99 C 5179

MAY 23 2000

## MEMORANDUM OPINION AND ORDER

Plaintiff markets Beanie Babies. They have been a phenomenal marketing success. Beanie Babies include plush "new face" bears and they are the subjects of copyright registrations. Defendant Holybears, Inc. markets plush bears with a religious theme. Plaintiff claims that those bears infringe its copyrights and has moved for a preliminary injunction. The motion for a preliminary injunction is denied.

This lawsuit has, from its filing, been acrimonious. Much of the attention has centered on whether or not defendants have disclosed e-mails which, plaintiff contends, would show that defendants deliberately copied its bears. Defendants respond that the e-mails would show original creation if they could be retrieved, but they have been lost in cyberspace. We have waited to rule on preliminary relief until we could make some sense of that dispute and, having concluded that it is largely irrelevant, we are prepared to rule.

The parties disagree about the preliminary injunction standards, with plaintiff arguing that it need not show more than some likelihood, more than negligible, that it will prevail on the merits of its claim, while defendants argue that plaintiff must show a reasonable likelihood of prevailing. We think those are distinctions without much of a difference. To obtain a

preliminary injunction plaintiff must demonstrate (1) some likelihood that it will prevail, (2) absence of an adequate remedy at law, and (3) that it will suffer irreparable harm absent injunctive relief. Should those requirements be satisfied, we must then weigh the portended irreparable harm to the plaintiff against the potential injury to the defendant and must consider the effect of the injunction upon non-parties. "A determination whether to issue a preliminary injunction is, by its very nature, an exercise in weighing competing equities and interests." Publications International, Ltd. v. Meredith Corp., 88 F.3d 473, 478 (7th Cir. 1996). If the accused product is a brazen knockoff, the answer is easy. Irreparable harm to the plaintiff is presumed and there are no competing defendant equities. The stronger the case on the merits the less irreparable harm need be shown. Ty, Inc. v. GMA Accessories, Inc., 132 F.3d 1167, 1172 (7th Cir. 1997). Conversely, even though a plaintiff's chances of prevailing are no more than possible, it may be entitled to preliminary relief if a failure to grant it would cause plaintiff irreparable harm while the potential injury to the defendant is minor. *See* Abbott Laboratories v. Mead Johnson & Co., 971 F.2d 6 (7th Cir. 1992).

How, then, do we evaluate plaintiff's likelihood of prevailing? Plaintiff must prove it has valid copyrights, and nothing in the present record indicates it does not. It must then show that the defendants copied original elements of the work. It can establish copying by proof of access and substantial similarity between the copyrighted and accused products. Substantial similarity can be demonstrated by a side-by-side comparison. Would the ordinary reasonable observer, comparing the two expressions, regard them as substantially similar unless he set out to detect the disparities? Would she conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value? Would she regard the aesthetic appeal as the same? Wildlife Express Corp. v. Carol Wright Sales, Inc.,

18 F.3d 502 (7th Cir. 1994).

But copying is not enough. The test of substantial similarity is copying <u>and</u> improper appropriation. *Id.* The Copyright Act "assures authors the right to their original expression, but encourages others to build freely upon the ideas and information conveyed by a work." <u>Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.</u>, 499 U.S. 340, 349-350 (1991). In patents, the concept is articulated as "designing around" a patent. <u>Hilton Davis Chemical Co. v. Warner-Jenkinson Co., Inc.</u>, 62 F.3d 1512, 1520 (Fed.Cir. 1995), *rev'd on other grounds*, 117 S.Ct. 1040 (1997). In copyright it is often articulated as the dichotomy between unprotected ideas versus protected expression, a somewhat elusive concept we discussed some years ago in <u>Runstadler Studios, Inc. v. MCM Ltd. Partnership</u>, 768 F.Supp. 1292, 1297-98 (N.D.Ill. 1991). "Nobody has ever been able to fix that boundary, and nobody ever can." <u>Nichols v. Universal Pictures Corp.</u>, 45 F.2d 119, 121 (2d Cir. 1930), *cert. denied*, 282 U.S. 902 (1931). There is, however, indeed a tension between monopoly and the encouragement of an author's creativity. *See* <u>Sony Corp. of America v. Universal City Studios, Inc.</u>, 464 U.S. 417, 429 (1984); <u>Gund, Inc. v. Smile International, Inc.</u>, 691 F.Supp. 642 (E.D.N.Y. 1988), *aff'd*, 872 F.2d 1021 (2d Cir. 1989).

The more particularized and complex the expression the greater the area of protection. <u>Wildlife Express</u>, 18 F.3d at 508.

> As a work embodies more in the way of particularized expression, it moves farther away from the bee pin in <u>Kalpakian</u>, and receives broader copyright protection. At the opposite end of the spectrum lie the "strongest" works in which fairly complex or fanciful artistic expressions predominate over relatively simplistic themes and which are almost entirely products of the author's creativity rather than concomitants of those themes. *See, e.g.*, <u>Krofft</u>, 562 F.2d at 1169 ("The expression inherent in the H. R. Pufnstuff series differs markedly from its relatively simple idea"). As one court noted: "The complexity and artistry of the expression of an idea will separate it from even the most banal

idea. ... [T]he scope of copyright protection increases with the extent expression differs from the idea." *Id.* at 1168. *See also* Universal Athletic Sales Co. v. Salkeld, 511 F.2d 904 (3d Cir.), *cert. denied*, 423 U.S. 863, 96 S.C. 122, 42 L.Ed.2d 92 (1975) ("between the extremes of conceded creativity and independent effort amounting to no more than the trivial, the test of appropriation necessarily varies"); Clarke, 472 F.Supp. at 482-83.

Atari, Inc. v. North American Philips Consumer Electronics Corp., 672 F.2d 607, 617 (7th Cir. 1982), *superseded by statute on other grounds as stated in* Scandia Down Corp. v. Euroquilt, Inc., 772 F.2d 1423, 1429 (7th Cir. 1985). When the copyrighted work embodies original expression in an article that includes substantial materials in the public domain, our emphasis necessarily must be on the substantial similarities between the originality expressed in the copyrighted work and the accused work. Country Kids 'N City Slicks, Inc. v. Sheen, 77 F.3d 1280 (10th Cir. 1996); *see also* Feist Publications, Inc., 499 U.S. at 348 and 361.

It is beyond dispute that defendants had access to Beanie Baby bears. Indeed, defendant LeClair wrote about Beanie Babies under the name "BeanyGenie." We think it is also clear that the Beanie Baby marketing phenomenon led to the defendants' entry into the bean bag bear market. It is also relatively clear that at least some initial Holybear samples were strikingly similar to the copyrighted bears and in all probability infringed. We believe the evidence establishes that Beanie Baby bears were very much in the forefront of Robert LeClair's mind when he got into the business. In a certain sense he "copied" those bears, but that sense is not enough. Herbert Rosenthal Jewelry Corp. v. Kalpakian, 446 F.2d 738, 741 (2d Cir. 1971).

Defendants point out a number of differences between Beanie Baby bears and Holybears. The Holybear's eyes and ears are positioned wider apart than Ty's, the Holybear body parts are generally slightly larger, the Holybears have separate interior mesh sacks, they

are more fully stuffed, the legs are straighter, and Holybears are plumper. Those differences are, however, marginal. The shape, size and type of cloth, are substantially similar. The faces, however, are different. It is unclear whether defendants did not initially understand that plaintiff had copyrights or whether they later recognized that plaintiff would aggressively pursue them (as it has) if they infringed. In any event, the production Holybears' faces were changed from those of the initial samples.

Was that change enough to avoid infringement? We think it probably was.

Stuffed toy bears have long been with us, as have bean bag toys. The teddy bear has been part of American culture for almost a century, as described in <u>The Century of the Teddy Bear</u> by Constance Smith (1997). *See also* <u>North American Bear Company v. Carson Pirie Scott & Co.</u>, 1991 WL 259031 (N.D.Ill.). Stuffed toy bears have heads, ears, bodies, arms and legs, and a visit to any toy store reflects that there are a great number of teddy bear designs that have some similarities. We have no reason to doubt that the heads, ears, bodies, arms and legs of Beanie Baby bears have some modicum of originality. Those bears are not, however, the David statue or <u>War and Peace</u>. Plaintiff's marketing success is not because of the quality and complexity of artistic expression. *See* <u>Ty, Inc. v. GMA</u>, 132 F.3d at 1171 (noting Ty's practice of artificially creating product shortage in order to "excite the market"). The differences between Beanie Baby bears and various other stuffed bears is of limited particularity. It is against this spectrum that we act as an ordinary reasonable observer. And it is in that context that the differences in the faces become significant.

The Beanie Baby bear face is quite simplistic. Two plastic eyes stare out over a plastic nose on the suggestion of a snout, and there is no mouth. The Holybear has a well-defined snout (an additional piece), a felt nose, and a stitched mouth. It has a much more traditional

teddy bear look. We think there is a sufficient difference in the total concept and feel, in the essential expression, to probably preclude a finding of infringement. To decide otherwise might well provide plaintiff with "a larger private preserve than Congress intended to be set aside in the public market without a patent." Kalpakian, 446 F.2d at 742.

That conclusion does not end our inquiry, since in appropriate cases some likelihood of prevailing may be enough to undergird preliminary relief. We recognize that a damages remedy is not altogether satisfactory in a copyright case because damages are difficult to measure. There is, however, because of that, recourse to statutory damages. Nor is plaintiff's contention of irreparable harm particularly compelling. While defendants may cause some minor disruption to plaintiff's scheme of distribution, Holybear, Inc. is in a niche market which may be largely separate from plaintiff's, and there appears to be no dispute that defendants' bears are of good quality. *See* Ty, Inc. v. GMA, 132 F.3d at 1173. A preliminary injunction may well, on the other hand, put defendants out of business. After weighing the competing equities and interests, we decline to issue a preliminary injunction.

JAMES B. MORAN  
Senior Judge, U. S. District Court

May 22, 2000.